Approved: _____
JAMES MCMAHON
Assistant United States Attorney

Before:      HONORABLE ANDREW E. KRAUSE
             United States Magistrate Judge
             Southern District of New York

- - - - - - - - - - - - - - - - x
                                :   23 MJ 5377
                                :
UNITED STATES OF AMERICA         :   SEALED COMPLAINT
                                :
                                :
                                :   Violations of
         - v. -                  :   15 U.S.C. §§ 78j(b) and
                                :   78ff; 17 C.F.R. 240.10b-5
                                :
ELIEZER TILSON,                  :
                                :   COUNTIES OF OFFENSE:
         Defendant.              :   Rockland and New York
                                :
- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

     CARMEN A. CACIOPPO, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE
(Securities Fraud)

     From in or about October 2019 to the present, in the Southern District of New York and elsewhere, ELIEZER TILSON, the defendant, willfully and knowingly, directly and indirectly, by use of a means and instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security registered on a national securities exchange and any security not so registered, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statement made, in light of the circumstances under which it was made, not misleading; and (c)

engaging in an act, practice and course of business which operated and would operate as a fraud and deceit upon a person, to wit, TILSON solicited funds for an investment managed by others without authority and converted those funds to another use.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

1. I am a Special Agent with the FBI and I have been personally involved in the investigation of this matter. I have been a Special Agent with the FBI for about seven years. I am currently assigned to a white-collar crime squad in the FBI's New York Field Office. Before that, I was a certified public accountant. I have received training regarding securities fraud and have been involved in several investigations relating to violations of the federal securities laws and related offenses.

2. This affidavit is based upon my review of documents and my interviews of witnesses. Because this Complaint is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and statements of others are reported herein, they are reported in substance and in part. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

**THE SCHEME TO DEFRAUD**

3. Victim 1 and Victim 2 (collectively, the "Victims,") are investors who invest through entities domiciled in Brooklyn, New York. Victim 1 has told me that while the Victims each invest their own funds separately, they often work together to evaluate investment opportunities and invest in the same enterprises.

4. Victim 1 has told me that the Victims were introduced to ELIEZER TILSON, the defendant, in or about early 2019. TILSON told the Victims that he was a real estate

2

investment promoter and that he was looking to raise capital for elder care facilities. TILSON maintains a current driver's license in New York, which bears a residential address in Monsey, New York. I know from my interviews of witnesses and reviews of documents that TILSON also maintains a residence in Israel.

5. Victim 1 has said that the Victims each invested in two investments promoted and managed by ELIEZER TILSON, the defendant, known respectively as Pancho Memory Care and Pancho Tomball.

6. Victim 1 has said, and emails I have reviewed show, that on or about October 11, 2019, ELIEZER TILSON, the defendant, approached the Victims with an investment opportunity known as Domus II that involved a multifamily residential property in Arizona. On or about that same day, TILSON emailed both Victims a brochure relating to the Domus II deal that included a description of the property to be built and projections of the return on the investment.

7. On or about October 23, 2019, ELIEZER TILSON, the defendant, emailed the Victims and said "I wanted to know your thoughts on this project as we need to close the raise."

8. Victim 1 has said that on or about October 30, 2019, he told ELIEZER TILSON, the defendant, that he was likely to invest $400,000 in Domus II and that Victim 2 was likely to invest an additional amount. TILSON responded that he would send the Victims the details as to where to wire the money. The Victims had dinner with TILSON in a restaurant in Manhattan that evening to discuss Domus II.

9. On or about October 31, 2019, ELIEZER TILSON, the defendant, emailed the Victims the wire instructions for the Domus II deal. I have reviewed this email. It instructs the Victims to send their money to a bank account held by Pancho Real Estate Capital, LLP. I have also reviewed the signature card for this account that was produced by the bank. It shows that this account is controlled by TILSON and an attorney in New Jersey.

10. Victim 1 signed the subscription agreement for Domus II he had received with the brochure ELIEZER TILSON, the

3

defendant, had sent him. Pursuant to the instructions on the subscription agreement, Victim 1 emailed the agreement to R.G., the manager of the Domus II deal. Victim 1 also wired $150,000 to the account designated by TILSON. On or about November 4, 2019, Victim 1 wired an additional $250,000 to the same account. I have reviewed the executed subscription agreement and the email in which it was transmitted to R.G, as well as the wire transfer forms from Victim 1's bank that indicate the funds were wired as described above.

11. On or about November 1, 2019, Victim 2 wired $150,000 to the account designated by ELIEZER TILSON, the defendant. On or about November 5, 2019, Victim 2 sent an additional $100,000 to the same account. I have reviewed the executed subscription agreement, as well as the wire transfer forms from Victim 2's bank that indicate the funds were wired as described above.

12. Victim 1 has told me that on or about November 12, 2019, Victim 1 received a telephone call from R.G., who stated that he had received a subscription agreement but no money from Victim 1. R.G. stated further that he had never heard of Victim 2, much less received a subscription agreement or money from him.

13. I have reviewed an email that ELIEZER TILSON, the defendant, sent the Victims on or about November 13, 2019 in which TILSON said in part:

> I spoke to [R.G] first thing . . . and I assure you the funds are definitely not floating anywhere. We have the funds and you are very much part of the deal. . . .. I feel like there have been a few admin failures on my part recently which should not be.

14. I have reviewed an email that ELIEZER TILSON, the defendant, sent the Victims on or about November 23, 2019 in which TILSON said in part:

> First of all 100% this is just technical I initiated the wire to [R.G.] and it has not gone through yet. I have had issues in the past with [his bank].

15. R.G. has stated in substance and in part in an

4

affidavit he executed as part of a civil lawsuit brought by the Victims against ELIEZER TILSON, the defendant, in the Supreme Court of New York, County of Rockland that:

      a. He is a promoter of real estate investments, including Domus II.

      b. He received an unsolicited email containing an executed subscription agreement from Victim 1 on or about October 31, 2019. Prior to receiving this email, he had never heard of Victim 1 or the possibility that he would invest in Domus II.

      c. He did not receive, and has never received, any money from Victim 1.

      d. He spoke with Victim 1 on the telephone on November 12. During that call, he learned for the first time about Victim 2 and his potential investment.

      e. He did not receive, and has never received, any money from Victim 2.

      f. ELIEZER TILSON, the defendant, was not affiliated with, or authorized to transact business on behalf of, R.G. or Domus II. R.G. had only heard of TILSON years earlier through another investor.

      16. In an apparent effort to reassure the Victims that he had sufficient funds with which to return their money, ELIEZER TILSON, the defendant, sent on or about November 25, 2019 to Victim 1 a document purportedly from his bank showing a balance of $837,956.26 in the Pancho Real Estate Capital account to which the Victims sent their money. This document was dated November 26, 2019, or one day after the email in which the document was sent. I have reviewed this document, as well as account statements for this account produced by the bank. The account statements show that as of November 26, 2019, the Pancho Real Estate account was overdrawn.

      17. I have reviewed an email sent by ELIEZER TILSON, the defendant, to the Victims on or about November 26 in which TILSON said in part:

> Please see attached message confirming that the $400,000 went out to [Victim 1] and also I sent an update Available balance. I am not sure why but I did not receive a message for [Victim 2] yet, I will follow up first thing in the morning. I definitely sent for both. I should get another message at one point today which has the confirmation number on in it. Once I receive it, I will send it to you. [Victim 2,] I am on it first thing in the AM for you to make sure this goes through.

Attached to the email was a form indicating that an ACH payment for $400,000 had been made on or about November 25, 2019 to Victim 1's account. Victim 1 never received this money. Another form was attached to the email indicating that the Pancho Real Estate Capital account had a balance of $437,931.26, apparently after the transaction. As noted above, the actual balance of this account was negative at this time.

      18.  Bank documents for the Pancho Real Estate Capital account show the arrival of the Victims' money. ELIEZER TILSON, the defendant, then transferred $396,000 from that account to an account held by Pancho Memory Care REIT, an investment promoted by TILSON that has no relationship to Domus II. Bank documents for the Pancho Memory Care REIT account show that TILSON then transferred funds from that account to Victim 1. Victim 1 has told me that these funds were intended to be dividends on his investment in Pancho Memory Care. The bank records also show that TILSON made additional transfers of funds three days later to approximately 25 individuals and entities that Victim 1 has identified as other investors in Pancho Memory Care, as well as to lenders that make loans to commercial borrowers.

19. I have listened to a recording of a telephone call between ELIEZER TILSON, the defendant, had with the Victims on or about December 2, 2019 in which the defendant responded to a question about where the Victims' money had gone by stating in substance and in part "I, I, I used it to bridge other things, and I was planning on money coming in right away to get you Domus."

WHEREFORE, deponent prays that ELIEZER TILSON, the defendant, be arrested, and imprisoned or bailed as the case may be.

CARMEN A. CACIOPPO
Special Agent
Federal Bureau of Investigation

Sworn to before me this
7th day of July, 2023

HONORABLE ANDREW E. KRAUSE
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK